ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| GARY ÁLVAREZ BRAU, GLORIA ANTONIA RAMOS VALLE Y LA SOCIEDAD DE BIENES GANANCIALES COMPUESTA POR AMBOS | | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez |
|---|---|---|
| Apelados | KLAN202400691 | Caso Núm.: MZ2021CV00692 |
| v. | | |
| MARGARITA VÁZQUEZ GARCÍA, GALO SANTIAGO PABÓN Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS | | Sobre: Entredicho temporal; Orden de paralización; Injunction preliminar; Injunction permanente; Daños y perjuicios; Deslinde y Amojonamiento |
| Apelantes | | |

Panel integrado por su presidenta, la Jueza Ortíz Flores, la Jueza Aldebol Mora, y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de noviembre de 2024.

Comparecen ante nos la señora Margarita Vázquez García, el señor Galo Santiago Pabón y la Sociedad Legal de bienes Gananciales compuesta por ambos (en conjunto, la parte demandada-apelante) mediante el presente recurso de *Apelación Civil* y nos solicitan que revoquemos la *Sentencia Parcial y Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI), el 9 de mayo de 2024. Mediante el referido dictamen, el foro primario declaró Ha Lugar un *Injunction* estatutario respecto a una marquesina ordenando a la parte aquí apelante a demolerla en su totalidad.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

**I**

El 28 de mayo de 2021 el señor Gary Álvarez Brau, la señora Gloria Antonia Ramos Valle y la Sociedad Legal de bienes Gananciales compuesta por estos (en conjunto, la parte demandante-apelada)

Número Identificador

SEN2024_____

presentaron una *Demanda*[1] sobre entredicho temporal, orden de paralización, *injunction* preliminar y permanente, daños y perjuicios y deslinde y amojonamiento contra la señora Vázquez García, el señor Santiago Pabón y la Sociedad Legal de bienes Gananciales compuesta por ambos. En apretada síntesis, la parte demandante expresó que son dueños de la propiedad ubicada en la Carr. 3362 Ramal, Km, 1.5, Bo. Guamá en San Germán, Puerto Rico. Añade que el 12 de octubre de 2010, mediante el otorgamiento de la escritura pública número setenta y dos (72), le vendieron a la parte demandada la propiedad colindante con su finca. La parte demandante alegó, además, que la parte demandada le solicitó que le permitiera colocar una verja y un portón en la propiedad de estos, lo cual accedieron sin que se entendiera que estaban cediendo dicha parte del terreno a los demandados. Arguyeron que acordaron junto a la parte demandada, que no debían cortar un árbol de caoba, ubicado entre los previos, pues tenía un valor sentimental para el señor Álvarez Brau. Además, exponen que la parte demandada cortó el referido árbol de caoba a pesar de lo acordado. También, alegaron que la parte demandada ha impedido que la parte demandante explote su finca para fines agrícolas. Arguyeron, además, que la parte demandada pretendía segregar la franja de terreno perteneciente a la parte demandante. Por lo que solicitaron al foro primario, el deslinde y amojonamiento del terreno donde ubica la verja y demás construcciones realizadas por la parte demandada y que las mismas sean removidas.

El 8 de junio de 2021, el Tribunal de Primera Instancia emitió una *Sentencia Parcial* en la cual desestimó la causa de acción de *Injunction* preliminar presentada por la parte demandante por falta de un daño irreparable al existir remedios ordinarios para la resolución del caso.[2]

En respuesta, la parte demandada presentó su *Contestación a Demanda* y *Reconvención* el 4 de agosto de 2021.[3] En esencia, la parte

---

[1] Apéndice Recurso de *Apelación Civil*, págs. 50-55.
[2] Apéndice Recurso de *Apelación Civil*, págs. 66-72.
[3] Apéndice Recurso de *Apelación Civil*, págs. 56-62.

demandada realizó sus alegaciones responsivas y alegó que la parte demandante le cedió, mediante un escrito, una franja de diez (10) pies a lo largo de la colindancia de ambos. De igual forma, en su reconvención arguyó que la parte demandante incumplió con el contrato celebrado entre ellos y que procedía un expediente de dominio para obligar a que la franja cedida mediante contrato fuera legalizada.

Por su parte, la parte demandante presentó su *Contestación a Reconvención* el 26 de agosto de 2021.[4] En síntesis, la parte demandante realizó sus alegaciones responsivas y alegó que nunca cedieron franja alguna de terreno ni mucho menos permitieron construir cualquier estructura sobre su propiedad.

Tras varios trámites procesales, el 26 de septiembre de 2023 se celebró una vista de *Status Conference.*[5] Según surge de la *Minuta* de esa vista, el TPI concedió un término de treinta días (30) a la parte demandada para notificar el permiso de construcción de las obras realizadas en la franja y de no existir el permiso, debían certificarlo.

El 15 de noviembre de 2023 la parte demandada presentó una *Moción Informativa en Cumplimiento de Orden*[6] en la cual expresó lo siguiente:

[…]

2. Mantenemos la posición de que los demandantes cedieron mediante documento fehaciente y con sus firmas la franja de terreno en controversia y señalaron exactamente donde establecer la misma.

3. Para el 2009, la parte demandada no necesitaba solicitar un permiso de ARPE para establecer la verja en el lugar que se hizo y con la altura que se hizo de acuerdo al Ing. Héctor Rodríguez.

4. De todos modos en el 2009 los demandados obtuvieron un permiso de construcción del DTOP para el 15 de septiembre de 2009 (EXHIBIT A).

[…]

6. Ninguna agencia de gobierno que otorgue permisos, allá para el 2009, tenía la facultad de dar ni quitar derechos

---

[4] Apéndice Recurso de *Apelación Civil*, págs. 63-65.
[5] Tomamos conocimiento judicial del caso núm. MZ2021CV00692, entrada núm. 74 del Sistema Unificado de Manejo del Caso (SUMAC).
[6] Véase, SUMAC entrada núm.80.

propiedades de los regulados dentro de un procedimiento administrativo. El derecho a la propiedad es un derecho fundamental de acuerdo a la Carta de Derechos de la Constitución de los Estados Unidos.

Así las cosas, el 11 de enero de 2024, la parte demandante presentó una *Demanda Enmendada*.[7] En el aludido escrito, alegó que la parte demandada construyó una marquesina con ventanas y una verja en el predio de la parte demandante sin tener título y sin poseer permiso de ARPE, ni de la OGPe, por lo que solicitó un *Injunction estatutario* establecido en el Artículo 14.1 de la Ley Núm. 161 de 2009, *Ley para la Reforma del Proceso de Permisos de Puerto Rico,* 23 LPRA sec. 9024, para que se demolerá la verja y la marquesina edificadas sin permisos.

En respuesta, la parte demandada presentó su *Contestación a Demanda Enmendada* y *Reconvención* el 12 de marzo de 2024.[8] En síntesis, la parte demandada presentó sus alegaciones responsivas y arguyó que no era de aplicación el mecanismo de *Injunction* estatutario establecido en el Artículo 14.1 de la Ley Núm. 161 de 2009, *supra*, pues no podía aplicarse la aludida ley de manera retroactiva.

Por su parte, el 1 de abril de 2024, la parte demandante presentó su *Contestación a Reconvención*.[9]

Luego, el 14 de abril de 2024 la parte demandada presentó una *Enmienda a Contestación a Demanda Enmendada y Enmienda a la Reconvención*.[10] En este escrito, la parte demandada solicitó lo siguiente:

1. Con sumo respeto y sin intención de tener que reproducir nuevamente todo el documento titulado "Contestación a Demanda Enmendada" presentada el 12 de marzo de 2024 por SUMAC, se desea enmendar la Contestación a Demanda Enmendada solo para arreglar error de fecha en la Defensa Afirmativa número 18 donde lee como sigue: "18. La verja y marquesina fueron construidas y terminadas en septiembre de 2010" por lo que se enmienda y debe decir como sigue: "La verja y marquesina fueron construidas y terminadas en septiembre de 2009."

---

[7] Apéndice Recurso de *Apelación Civil*, págs. 73-81.
[8] Apéndice Recurso de *Apelación Civil*, págs. 82- 97.
[9] Apéndice Recurso de *Apelación Civil*, págs. 99-102.
[10] Apéndice Recurso de *Apelación Civil*, págs. 103-104.

El 15 de abril de 2024, la parte demandada presentó una *Moción en Oposición al Injunction Estatutario bajo el Artículo 14.1 de la Ley 161 de 2009.*[11] En esencia, la parte demandada arguyó que la parte demandante carecía de capacidad jurídica para solicitar el remedio interdictal encontrado en el Artículo 14.1 de la Ley Núm. 161 de 2009, *supra*; de la misma forma, alegó que no procedía que se aplicara la referida ley, pues existe en nuestro ordenamiento jurídico una prohibición a la aplicación retroactiva de las leyes.

Así las cosas, y luego de celebrada la vista sobre el entredicho estatutario, el Tribunal de Primera Instancia emitió una *Sentencia Parcial y Resolución* el 9 de mayo de 2024.[12] El TPI declaró **Ha Lugar** el *injunction* estatutario en torno a la marquesina y **No Ha Lugar** respecto a la verja. El foro primario realizó las siguientes determinaciones de hechos:

> 1. Los demandantes, Gary Álvarez Brau y Gloria Ramos Valle son propietarios y titulares del siguiente bien inmueble:
>
> RÚSTICA: Parcela o Lote número Uno (1) predio de terreno radicado en el Barrio Guamá del término municipal de San Germán, Puerto Rico de una cabida superficial de Veintisiete Mil Ochenta y Ocho punto Quinientos Catorce metros cuadrados (27,088.514 m.c.) equivalentes a Seis punto Ochenta y Nueve cuerdas (6.89 cdas) y en lindes por el Norte, en parte con la Parcela número Uno guion A (1-A) segregada y en parte con la Carretera Estatal número Tres Mil Trescientos Sesenta y Dos (3362), por el Sur, con remanente de la finca principal que se adjudica a Carlos Álvarez Rivera; por el Este, con Parcela número Dos (2) y por el Oeste, en parte con solar segregado perteneciente a Galo Santiago y Margarita Vázquez (hoy) y con la carretera estatal tres mil trescientos sesenta y dos (3362) que conduce hacia la carretera número dos (2) y en parte con camino de la finca que desemboca en el remanente de la misma finca para adjudicarse a Carlos Álvarez Rivera. Contiene una casa de dos plantas construida de bloques y concreto armado.
>
> 2. Los demandantes están legalmente casados.
>
> 3. El 16 de febrero de 2009 los demandados, Margarita Vázquez García y Galo Santiago Pabón le pagaron diez mil dólares ($10,000.00) a los demandantes para separar una propiedad inmueble perteneciente a los demandantes que colinda con la propiedad descrita anteriormente.

---

[11] Apéndice Recurso de *Apelación Civil*, págs. 45-48.
[12] Apéndice Recurso de *Apelación Civil*, págs. 1-18.

4. El 20 de febrero de 2009 la Sra. Margarita Vázquez García alegó que le pagaron otros treinta mil ($30,000.00) a los demandantes.

5. El 12 de octubre de 2010 la parte demandada, mediante Escritura Pública número 72 otorgada ante el notario Lcdo. José R. Díaz Rodríguez adquirió mediante compraventa, de la parte demandante reconvenida, la siguiente propiedad:

RÚSTICA: Predio de terreno sito en el Barrio Guamá del término municipal de San Germán, Puerto Rico, con una cabida superficial de ochocientos veinticuatro punto doscientos dieciséis metros cuadrados (824.216 m.c.) y en lindes por el NORTE, con terrenos de Carlos M. Álvarez Rivera y el remanente de la finca principal de la cual se segrega; por el SUR, con remanente de la finca principal de la cual se segrega; por el ESTE, con remanente de la finca principal de la cual se segrega y por el OESTE, con la Carretera Estatal tres mil trescientos sesenta y dos (3362).

6. La parte demandada aceptó en la Contestación a Demandada Enmendada, radicada el 12 de marzo de 2024, todo lo expuesto en el párrafo anterior. Sin embargo, negó que los demandantes "sean los dueños de una franja de terreno de 10 pies cedida a lo largo de la colindancia entre las partes".

7. En la Escritura Pública número 72 otorgada ante el notario Lcdo. José R. Díaz Rodríguez el 12 de octubre de 2010 no se hizo alusión alguna a un presunto acuerdo entre las partes por virtud del cual la parte demandante le cediera a la parte demandada de una franja de terreno adicional al solar descrito en ella.

8. La teoría de prescripción adquisitiva o usucapión y que tampoco resolvería el planteamiento de la parte demandante de que la parte demandada no tiene un justo título dado que nunca se otorgó una escritura de donación. Esos asuntos serán adjudicados en el juicio plenario. Ahora bien, la teoría de prescripción adquisitiva es impertinente para la controversia de sí la parte demandada tenía permiso de ARPE o de OGPe para construir la verja y la marquesina.

9. En la vista la Sra. Margarita Vázquez García declaró que ella y su esposo construyeron la verja que divide ambos bienes inmuebles en el 2009.

10. La señora Vázquez García declaró que para construir la verja "obtuvieron un permiso del Departamento de Obras Públicas" sin embargo en la vista celebrada el 15 de abril de 2024 la representación legal de esta ofreció en evidencia un documento que tiene el logo del Estado Libre Asociado de Puerto Rico, Departamento de Transportación y Obras Publicas (fechado 15 de septiembre de 2009), dirigida al Sr. Galo Santiago Colón.

11. En el párrafo número 5 del Exhibit III por Estipulación dice literalmente lo siguiente:

"La aprobación de este **endoso** sólo se limita a los aspectos del proyecto que tienen que ver con este Departamento. Ello no lo releva de tener que solicitar permiso por separado

de otras Agencias Municipales, Estatales o Federales que tengan que ver con el asunto." (Énfasis y subrayado nuestro).

12. El referido endoso corresponde a la construcción de una verja a la "construcción o reconstrucción se llevará a cabo fuera de los límites de la servidumbre de paso de la vía pública".

13. No hay duda de que el Exhibit III por Estipulación no es un permiso si no un endoso del DTOP.

14. La agencia gubernamental que tenía competencia para otorgar permisos de construcción en el año 2009 era ARPe y no el Departamento de Transportación y Obras Públicas.

15. Para febrero de 2020, habiéndose decretado la Pandemia del COVID-19 el señor Gary Álvarez Brau tomó las dos fotos que fueron admitidas en evidencia como los Exhibits I y II por Estipulación.

16. De las referidas fotos y del testimonio del señor Álvarez Brau se desprende que para febrero de 2020 la parte demandada no había cerrado las paredes de la marquesina ni colocado ventanas mencionadas en la Tercera Causa de Acción, párrafos 44 y 49, de la Demanda Enmendada.

17. El ingeniero Juan García Badillo quien es ingeniero civil desde 1970 y posee licencia para ejercer su profesión en el Estado Libre Asociado de Puerto Rico visitó la casa de los demandantes por segunda ocasión para tomar determinadas medidas y verificar la información que obtuvo del "Estimado de Costos para la Demolición Parcial de Marquesina, Patio y Verja de Colindancia y Reconstrucción de la Misma" que preparó, para la parte demandada, el ingeniero Héctor Iván Rodríguez Vidro. Ese estimado fue admitido en evidencia como el Exhibit 4 de la parte demandante.

18. En la página 2, Parte II del Exhibit 4, se expresó: "El estimado de costo ha sido preparado basándonos única y exclusivamente por la información ofrecida por la señora Vázquez y el señor Santiago." En la página 3, Parte II el ingeniero Rodríguez Vidro incluyó un "Resumen de Estimado de Costo" de forma tabloide. Allí dice que la demolición de la marquesina costaría $5,935.36 y que la construcción de esta se estima en $29,082.83.

19. Surge del testimonio incontrovertido del ingeniero Juan García Badillo (perito de la parte demandante reconvenida) que el costo de la obra de construcción realizada por la parte demandada reconviniente en febrero de 2020 en la marquesina excede los seis mil dólares ($6,000.00).

20. A preguntas del Tribunal el ingeniero García Badillo, quien fue calificado como perito por su experiencia y preparación académica, declaró que en su opinión para construir la marquesina se requería un permiso de ARPe o de OGPe, que las paredes están construidas en madera con ventanas, y que la estructura tiene piso de hormigón y está sostenida con acero.

21. Surge además del testimonio de la demandada reconviniente, Sra. Margarita Vázquez García, que la parte demandada no gestionó un permiso en ARPe para construcción de la marquesina. Tampoco gestionó permiso de la OGPe, en el 2020, para construir las paredes, colocar las ventanas y realizar los trabajos eléctricos que aparecen en las fotos admitidas como los Exhibits I y II por Estipulación.

22. La parte demandada reconviniente no presentó evidencia de que hubiere gestionado y obtenido un permiso de construcción de la marquesina ni presentó evidencia de que hubiere gestionado permiso de la OGPe, en el 2020, para construir las paredes, colocar las ventanas y realizar los trabajos eléctricos.

23. La parte demandante reconvenida no presentó evidencia de cuándo se construyó la verja edificada en la colindancia (o en la franja de 10 pies que alega la parte demandada adquirió por prescripción adquisitiva).

24. La parte demandada reconviniente no ha cumplido con acreditar que tiene permiso gubernamental para construir la marquesina que ocupa parte del predio de la parte demandante reconvenida [la franja descrita en el párrafo 47 de la Tercera Causa de Acción de la Demanda Enmendada]. Más aun, no ha cumplido con ilustrar al Tribunal sobre cuál es la disposición del Reglamento Conjunto "que concede la exención de permiso para la construcción de una verja según la zonificación en la que se encuentra el inmueble en controversia." Sin embargo, el Tribunal toma conocimiento del Reglamento Conjunto 2023, Regla 3.2.4.2. En ese sentido ninguna de las partes acreditó si esta verja cumplía con la Regla 8.3.2 del mismo Reglamento para estar exenta.

Inconforme, la parte demandada presentó una *Moción en Reconsideración*.[13] Del mismo modo, la parte demandada presentó una *Moción para Suplementar Moción de Reconsideración*.[14] En respuesta, la parte demandante presentó su *Oposición a Moción de Reconsideración*.[15]

El 20 de junio de 2024 el Tribunal de Primera Instancia emitió una *Resolución* declarando **No Ha Lugar** la reconsideración presentada por la parte demandada.[16]

Inconforme, el 22 de julio de 2024, la parte apelante comparece ante nosotros mediante el presente recurso de *Apelación Civil,* en el cual nos expone lo siguientes señalamientos de error:

**Primer Error:** Erró el Honorable Tribunal de Primera Instancia al declarar con lugar el Injunction Estatutario bajo el Artículo 14.1 de la Ley 161 de 1 de diciembre de 2009, conocida como "Ley para la Reforma del Proceso de

---

[13] Apéndice Recurso de *Apelación Civil,* págs. 20-28.
[14] Apéndice Recurso de *Apelación Civil,* págs. 29-33.
[15] Apéndice Recurso de *Apelación Civil,* págs. 34-42.
[16] Apéndice Recurso de *Apelación Civil,* pág. 43.

Permisos de Puerto Rico", para la marquesina, por no haberse probado los elementos que requiere dicho artículo.

**Segundo Error:** Erró el Honorable Tribunal de Primera Instancia al declarar con lugar el Injunction Estatutario bajo el Artículo 14.1 de la Ley 161 de 1 de diciembre de 2009, conocida como "Ley para la Reforma del Proceso de Permisos de Puerto Rico", para la marquesina, por existir controversia en cuanto la titularidad de una franja cedida, según demanda la parte aquí apelada, caso que continua en juicio ordinario entre las partes bajo el mismo número de caso y ante la misma juez.

**Tercer Error:** Erró el Honorable Tribunal de Primera Instancia al aplicar retroactivamente la Ley 161 de 1 de diciembre de 2009, conocida como "Ley para la Reforma del Proceso de Permisos de Puerto Rico", particularmente en su Artículo 14.1.

**Cuarto Error:** Erró el Honorable Tribunal de Primera Instancia en la aplicación de la Regla 607 de Evidencia, al realizar un directo que subsanaba la ausencia de prueba por la parte demandante en lugar de limitarse a preguntas aclaratorias sobre prueba ya presentada como permite la regla.

**Quinto Error:** Erró el Honorable Tribunal de Primera Instancia al determinar que la parte demandada, aquí apelante, incurrió en temeridad e imponiendo honorarios de abogados.

El 24 de octubre de 2024, la parte apelada presentó su *Oposición a la Apelación*; con la comparecencia de ambas partes, procedemos a resolver.

**II**

**A**. *Ley para la Reforma del Proceso de Permisos de Puerto Rico*

La Ley Núm. 161 de 2009, mejor conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico,* 23 LPRA sec. 9011, según enmendada, es el estatuto que provee el marco jurídico y administrativo que rige el proceso de solicitud, evaluación, concesión y denegación de permisos en Puerto Rico*. Laureano v. Mun. de Bayamón*, 197 DPR 420, 433 (2017). Fue adoptada con el propósito de cambiar y reformar el sistema de obtención de permisos en nuestra jurisdicción. Ley Núm. 161 de 2009, *supra*, en su Exposición de Motivos. Esta ley promueve, entre otras cosas, el mejorar la calidad y eficiencia en la administración de los procesos que involucran la evaluación de solicitudes para el otorgamiento, autorización o denegación de licencias, autorizaciones y

cualquier trámite necesario o que incida de forma alguna en la operación de un negocio en Puerto Rico, así como determinaciones finales y los permisos para desarrollos de proyectos de construcción. Artículo 1.2 de la Ley Núm. 161 de 2009, 23 LPRA sec. 9011. A raíz de esto, se creó la Oficina de Gerencia de Permisos (OGPe) como una Secretaría Auxiliar del Departamento de Desarrollo Económico y Comerció. Artículo 2.1 de la Ley Núm. 161 de 2009, 23 LPRA sec. 9012.

Entre los remedios que brinda el aludido estatuto, se encuentra el *Injunction* estatutario en su Artículo 14.1, 23 LPRA sec. 9024; en lo pertinente establece lo siguiente:

> La Junta de Planificación, un Municipio Autónomo con Jerarquía de la I a la III, una Entidad Gubernamental Concernida que haya determinado que sus leyes y reglamentos han sido violados, **o cualquier persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado**, **podrá presentar una acción de injunction**, mandamus, sentencia declaratoria, o cualquier otra acción adecuada para solicitar: 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado o de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; **4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado**.
>
> Indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación, Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V [*sic*] o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico, alegando los mismos hechos, **una parte adversamente afectada podrá presentar un recurso extraordinario en el Tribunal de Primera Instancia**. Una vez habiéndose presentado el recurso extraordinario al amparo del presente Artículo, la agencia administrativa perderá jurisdicción automáticamente sobre la querella y cualquier actuación que llevare a cabo con respecto a la misma será considerada ultra vires.
>
> **El Tribunal de Primera Instancia deberá celebrar vista dentro de un término no mayor de diez (10) días naturales desde la presentación del recurso y deberá dictar sentencia en un término no mayor de veinte (20) días naturales desde la celebración de la vista.**

En aquellos casos en los cuales se solicite la paralización de una obra o uso, de ser la misma ordenada por el Tribunal, se circunscribirá única y exclusivamente a aquellos permisos, obras o uso impugnado, mas no a ningún otro que se lleve a cabo en la propiedad y que cuente con un permiso o autorización debidamente expedida.

El Tribunal impondrá honorarios de abogados contra la parte que presenta el recurso bajo este Artículo si su petición resulta carente de mérito y razonabilidad o se presenta con el fin de paralizar una obra o permiso sin fundamento en ley. Los honorarios de abogados bajo este Artículo será una suma igual a los honorarios que las otras partes asumieron para oponerse a la petición judicial. En el caso que el Tribunal entienda que no es aplicable la presente imposición de honorarios de abogados, tendrá que así explicarlo en su dictamen con los fundamentos para ello. Las revisiones de los dictámenes bajo este Artículo ante el Tribunal de Apelaciones se remitirán a los paneles especializados creados mediante esta Ley y dicho foro tendrá 60 días para resolver el recurso de revisión desde la presentación del mismo.[17] (Énfasis nuestro.)

Al tratarse de un remedio extraordinario de carácter estatutario el *Injunction* reconocido en el Artículo 14.1 de la Ley Núm. 161 de 2009, *supra*, no se rige por aquellos requisitos rigurosos del entredicho tradicional establecido en la Regla 57 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 57.1. Véase, *Díaz Vázquez y otros v. Colón Peña y otros*, 2024 TSPR 113, 13; *CBS Outdoor v. BillBorad One, Inc. et al.*, 179 DPR 391, 409 (2010); *Next Step Medical v. Bromedicon et al.*, 190 DPR 474, 497 (2014). Contrario al mecanismo ordinario, el entredicho reconocido mediante estatuto es uno sumario y limitado que viabiliza la efectividad de las leyes y reglamentos de planificación. *Id.* véase, además, *Díaz Vázquez y otros v. Colón Peña y otros*, 2024 TSPR 113, 13. Recientemente, el Tribunal Supremo se expresó respecto al remedio interdictal que establece el Artículo 14.1 de la Ley Núm. 161, *supra*, específicamente para ordenar la paralización o demolición de una obra, como sigue:

 […]no se rige por los requisitos y criterios rigurosos que aplican al injunction tradicional en virtud de la Regla 57 de Procedimiento Civil, supra, ni tampoco se le pueden oponer las defensas tradicionales de la equidad […] De esta forma, hemos reconocido que cuando se solicita un injunction fundamentado en un estatuto, lo determinante preliminarmente es si la situación está o no cobijada por dicho estatuto.

---

[17] Artículo 14.1 de la Ley Núm. 161 de 2009, 23 LPRA sec. 9024.

En otras palabras, este remedio –al ser de carácter estatutario y no surgir de la equidad– procede cuando se demuestre que la obra o el uso no cuenta con las autorizaciones y los permisos correspondientes o que se realizó en contravención a lo dispuesto en el permiso concedido.[18]

En su Artículo 19.13, establece la vigencia y transición de la ley; sobre la misma versa de la siguiente forma:

Excepto por el Artículo 19.10, todos los Artículos de esta Ley entrarán en vigor inmediatamente a partir de su aprobación. Dentro de treinta (30) días a partir de la aprobación de esta Ley, el Gobernador nombrará, conforme a las disposiciones del Artículo 2.2 de esta Ley, a las personas que fungirán como el Secretario Auxiliar de la Oficina de Gerencia de Permisos y el Inspector General de Permisos, a los fines de que participen en la preparación y adopción de los reglamentos requeridos por esta Ley y el establecimiento de la Oficina de Gerencia de Permisos y la Oficina del Inspector General de Permisos.

No obstante, habrá un periodo de transición de un (1) año contado a partir de la aprobación de esta Ley. El Gobernador, o la persona en quien él delegue, tendrá facultad para adoptar aquellas medidas transitorias y tomar las decisiones necesarias para que se efectúe la transferencia ordenada por esta Ley sin que se afecten los servicios ni la programación normal de las funciones transferidas.

## B. *Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terrenos*

Como norma general, toda obra de construcción en Puerto Rico requiere un Permiso de Construcción. Sección 9.3.3. del Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terrenos, Reglamento Núm. 7951 de 20 de noviembre de 2010. El Reglamento Núm. 7951 expresamente prohíbe realizar cualquier actividad alguna de desarrollo o uso sin que se obtengan todos los permisos, autorizaciones y certificaciones de la OGPe. *Id.*, Sección 3.7. No pese a lo anterior, el reglamento reconoce que existen obras que no requieren permiso de construcción siempre y cuando estas no formen parte de una obra o desarrollo mayor, y estas son: las pinturas de edificios o estructuras existentes; el sellado de techos; el relleno de grietas, salideros o goteras en estructuras; enlucido en obras de hormigón y la instalación o cambios de losetas de piso, azulejos, cerámica y cualquier terminación de pisos o

---

[18] *Díaz Vázquez y otros v. Colón Peña y otros*, 2024 TSPR 113, 13.

pared. *Id.* Estas obras podrán realizarse sin la necesidad de obtener un permiso, no obstante, si alguna de estas obras excede de los $6,000.00 dólares o su construcción excede de los 6 meses debe ser notificada a la OGPe mediante una solicitud de servicio, por la cual OGPe emitirá una confirmación electrónica que será suficiente para que el solicitante comience la obra. *Id.*

En su Sección 3.6, el Reglamento Núm. 7951 establece que las disposiciones de este Reglamento prevalecerán sobre las disposiciones de cualquier otro reglamento que pueda ser de aplicación al caso en controversia.

**C**. *Ley Orgánica de la Administración de Reglamentos y Permisos (ARPE)*

La derogada Ley Núm. 76 de 24 de junio de 1975, mejor conocida como *la Ley Orgánica de la Administración de Reglamentos y Permisos (ARPE)*, 23 LPRA sec. 71, en su Artículo 28 establece un procedimiento similar al establecido en el Artículo 14.1 de la Ley Núm. 161, *supra*, como sigue:

> El Administrador o el Secretario de Justicia en los casos en los que así se solicite a nombre del Pueblo de Puerto Rico**, o de cualquier propietario u ocupante de una propiedad vecina, que resultare o pudiera resultar especialmente perjudicado por cualesquiera de dichas violaciones, además, de los otros remedios provistos por ley, podrá entablar recurso de interdicto**, mandamus , nulidad o cualquier otra acción adecuada para impedir, prohibir, anular, vacar, **remover o demoler cualquier edificio construido, o cualquier edificio o uso, hechos o mantenidos en violación de esta ley o de cualesquiera reglamentos adoptados conforme a la ley y cuya estructuración le haya sido encomendada a la Administración.** Esta autorización no priva a cualquier persona a incoar el procedimiento adecuado en ley para evitar infracciones a esta ley y a todos los reglamentos relacionados con la misma, para evitar cualquier estorbo (nuisance) o adyacente, o en la vecindad, de la propiedad o vivienda de la persona afectada. A estos fines, se provee el siguiente procedimiento especial:
>
> (a) Cuando, por persona o autoridad con derecho a ello, se presente petición jurada ante un juez del Tribunal de Primera Instancia de Puerto Rico identificando un edificio o casa, rótulo o anuncio, alegando que el mismo está siendo construido, instalado, erigido, exhibido, mantenido, ampliado, reparado, trasladado, alterado, reconstruido, o usado, o demolido, en violación de esta ley o de los reglamentos, mapas o planos aplicables especificando los actos

constitutivos de dicha violación e identificando la persona o personas que estén cometiendo la violación en cuestión, el tribunal expedirá una orden provisional dirigida a dichas personas requiriéndoles para que paralicen inmediatamente, bajo apercibimiento de desacato la obra, uso o instalación a que la petición se refiere, hasta tanto se ventila judicialmente su derecho.

(b) En la orden provisional se fijará la fecha de la vista que deberá celebrarse dentro de los diez (10) días siguientes a la radicación de la petición y se advertirá al querellado que en dicha vista podrá él comparecer, personalmente o por abogado, a confrontarse con las imputaciones que se le hacen, pudiendo dictarse la orden permanente si dejare él de comparecer.

(c) Tendrán derecho a presentar la **petición los colindantes y vecinos que pudieren ser afectados por la violación** y los funcionarios designados por los organismos gubernamentales que insten la acción, así como ingenieros o arquitectos que actúen como proyectistas o inspectores de la obra.

(d) Dicha orden deberá ser diligenciada en la misma forma en que se diligencia la citación para la primera comparecencia en los casos de desahucio. Se podrán utilizar los servicios de cualquier alguacil de los tribunales de justicia de Puerto Rico o de cualquier miembro de la Policía Estatal para diligenciar dicha orden. Se entregará al querellado copia de la orden y copia de la petición jurada. Ambos documentos llevarán el sello del tribunal.

(e) El querellado no vendrá obligado a radicar alegación escrita alguna en contestación a la petición, pero podrá oponer cualquier defensa procedente, como si se tratase de un caso criminal. No se cobrarán costas. Siempre que surgiese controversia sobre los hechos, el tribunal realizará una inspección ocular si lo creyere conveniente y si alguna de las partes lo solicita durante la vista.

(f) La resolución será emitida por el tribunal dentro de los diez (10) días siguientes a la celebración de la vista y podrá ordenar la paralización permanente de los actos alegados en la petición o dejar definitivamente sin efecto la orden provisional. Toda resolución será escrita y contendrá una exposición de las alegaciones principales de la petición y de la prueba producida por ambas partes, una referencia al mapa, plano o ley alegadamente infringido, o una transcripción de la disposición reglamentaria aplicable y una exposición de lo que hubiese demostrado la inspección ocular.

(g) Las resoluciones y órdenes serán apelables para el tribunal correspondiente de superior jerarquía. En tales apelaciones, y en lo aquí no provisto, regirán los términos y procedimientos que rigen las apelaciones en las acciones ordinarias, pero el récord lo constituirá el expediente original, que deberá ser elevado al tribunal de apelación. En caso de que la apelación se funde en apreciación de prueba y así se haga constar en el escrito de apelación, podrá elevarse la transcripción de la evidencia. En todos los demás casos, se

considerarán como finales, a los efectos de la apelación, las adjudicaciones de hecho contenidas en la resolución.

(h) El hecho de que se inicie el procedimiento especial aquí provisto impedirá el que pueda dictarse sentencia en una acción criminal sobre los mismos hechos. El hecho de haberse iniciado una acción criminal sobre los mismos hechos impedirá el que pueda expedirse una orden provisional o permanente bajo este procedimiento especial.

(i) El tribunal ante el cual la Administración de Reglamentos y Permisos haya incoado un caso por violación a esta ley o sus reglamentos, deberá imponerle en su sentencia a cualesquiera de las partes que hayan incurrido en temeridad en el pleito el pago de una suma por concepto de honorarios de abogado. La penalidad por esta ley impuesta no será de aplicación a la Administración de Reglamentos y Permisos, a las agencias, departamentos e instrumentalidades públicas del Estado Libre Asociado y sus municipios. La Administración de Tribunales remitirá los honorarios al Secretario de Hacienda para ser depositados en la cuenta de la Administración de Reglamentos y Permisos en el Departamento de Hacienda.

(j) Toda persona que viole los términos de una orden provisional o permanente recaída bajo este procedimiento especial incurrirá en desacato y será castigada por el tribunal que expidió la orden con multa no menor de cien dólares ($100) ni mayor de quinientos dólares ($500) o reclusión por un término no menor de diez (10) días ni mayor de seis (6) meses. (Énfasis suplido)

## D. *Reglamento de Calificación de Puerto Rico*

El Reglamento de Calificación de Puerto Rico, Reglamento Núm. 7628 de 11 de diciembre de 2008, establece que a partir de la fecha de su vigencia se requerirá que la ARPE expida permisos de construcción para toda edificación, ampliación o traslado de estructura, que no esté exenta por este reglamento. *Id.* en su Sección 3.02 (a). En la Sección 3.04 del Reglamento Núm. 7628, se establece que únicamente se expedirán aquellos permisos de construcción cuando la estructura o uso de pertenencia para lo que se solicite el permiso esté conforme las disposiciones del Reglamento. Sobre sus exenciones, la Sección 3.03 dicta lo siguiente:

> No será necesario cumplir con el requerimiento de permisos de construcción en los casos de estructuras cuya construcción haya sido legalmente autorizada a la fecha de vigencia de este Reglamento y realizada dentro de los términos de vigencia prescritos en el permiso de construcción expedido o en reparaciones de estructuras, excepto en las áreas designadas como sitios o zonas históricas establecidas en virtud de la Ley Núm. 374 de 14 de mayo de 1949, según

enmendada. Tampoco requerirán permisos aquellas estructuras removibles que alberguen usos agrícolas.

Por otro lado, las Secciones 45.00 a la 47.00 regulan todo lo relacionado a las marquesinas permisibles bajo este Reglamento.

### E. *Irretroactividad de la Ley*

El Artículo 9 del Código Civil de Puerto Rico, 31 LPRA sec. 5323, establece que las leyes aprobadas no tienen efecto retroactivo, excepto cuando estas expresan lo contrario. De igual forma, establece que la aplicación retroactiva de una ley no puede perjudicar aquellos derechos adquiridos de por la ley anterior. *Id.* Por lo tanto, la retroactividad de una ley es la excepción en la aplicación. *Mun. de Añasco v. ASES et al.*, 188 DPR 304, 324 (2013) que cita a *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728, 757 (2009); *Asoc. Maestros v. Depto. Educación*, 171 DPR 640, 648 (2007).

No empece a lo anterior, nuestro ordenamiento jurídico ha reconocido la aplicación retroactiva de una ley, aunque no conste de manera expresa en el estatuto, si surge de la voluntad implícita del legislador que su aplicación sea retroactiva. *Mun. de Añasco v. ASES et al.*, 188 DPR 188 DPR 307, 324(2013). Sobre el mismo el Tribunal Supremo ha expresado lo siguiente:

> Es por ello que, en circunstancias particulares, procede aplicar retroactivamente una ley aun cuando no se haya expuesto expresamente el efecto retroactivo en su texto, si tal aplicación es la más razonable a la luz del propósito legislativo que la inspiró.[19]

Es decir, en aquellos casos en que estén involucradas normas dirigidas a remediar males sociales o de derecho público, será lícito recurrir a reglas de interpretación para determinar si, al promulgar la ley, el legislador tuvo la intención de dar efecto retroactivo al estatuto en cuestión. Sin embargo, dicha intención debe ser auscultada acudiendo, en primer lugar, al texto de la ley. *Vargas v. Retiro,* 159 DPR 248, 270 (2003). En resumen, la aplicación retroactiva de una ley procede, aunque no se

---

[19] *Mun. de Añasco v. ASES et al.*, *supra*, pág. 325.

haya dispuesto expresamente el efecto retroactivo de la misma, cuando dicha interpretación resulta ser más razonable a tenor con el propósito legislativo de corregir un grave mal social o hacerles justicia a unos peticionarios.

**F**. *Orden y Modo de Interrogatorio y Presentación de la Prueba*

La Regla 607 de Evidencia de Puerto Rico, 32 LPRA Ap. VI R 607, establece en cuanto al rol del Juez o Jueza en el orden y modo de la presentación de prueba, lo siguiente:

> (A) La Jueza o el Juez que preside un juicio o vista tendrá amplia discreción sobre el modo en que se presenta la prueba e interroga a las personas testigos de manera que:
>
> > (1) La prueba se presente en la forma más efectiva posible para el esclarecimiento de la verdad, velando por la mayor rapidez de los procedimientos evitando dilaciones innecesarias.
> >
> > (2) Se proteja el derecho de las personas testigos contra preguntas impropias, humillantes o insultantes, o toda conducta ofensiva.
> >
> > (3) Se proteja también el derecho de éstas a que no se les detenga más tiempo del que exija el interés de la justicia y a que se les examine únicamente sobre materias pertinentes a la cuestión.
>
> […]
>
> (F) La Jueza o el Juez podrá -a iniciativa propia o a petición de una parte- llamar testigos a declarar, lo cual permitirá a todas las partes contrainterrogar a la persona testigo así llamada. **La Jueza o el Juez también podrá, en cualquier caso, interrogar a una o a un testigo, sea ésta o éste llamado a declarar por la propia Jueza o el propio Juez o por la parte. El examen de la Jueza o el Juez debe ir dirigido a aclarar las dudas que tenga o para aclarar el récord. En todo momento, la Jueza o el Juez debe evitar convertirse en abogado o abogada de una de las partes, evitando sugerir a la persona declarante una respuesta en particular**. (Énfasis suplido.)

Esta regla permite que el juzgador o juzgadora de los hechos pueda realizar preguntas, a los testigos de las partes, para aclarar las dudas que este tenga o los asuntos en el récord.

En el caso *Pueblo v. Pabón,* 102 DPR 436, 440 (1974), el Tribunal Supremo expresó lo siguiente:

> El juez no es el simple árbitro de un torneo medieval entre la defensa y el Ministerio Público o el retraído moderador de un debate. El juez es partícipe y actor principal en el

esclarecimiento de la verdad y en la determinación de lo que es justo. El juez puede y debe ser en casos vistos con o sin jurado, aunque con mayor libertad en los segundos, participante activo en la búsqueda de la justicia, siempre que no vulnere la imparcialidad que su alto oficio reclama. Puede el juzgador en consecuencia requerir la declaración de determinados testigos o interrogar a los que las partes ofrezcan, siempre que su conducta se mantenga dentro de las normas de sobriedad y equilibrio que impiden que el juez sustituya, en vez de que complemente, la labor del fiscal o del defensor. Nada impide que un juez, para aclarar un testimonio o una situación, o consciente de que no se han formulado algunas preguntas centrales para la determinación de lo sucedido verdaderamente en un caso, se tome la iniciativa a dicho efecto.

Por otro lado, el Canon 11 de Ética Judicial de Puerto Rico, 4A LPRA Ap. IV-B C.11, establece lo siguiente sobre la intervención de los jueces y juezas durante la celebración de un juicio, lo siguiente:

Aunque es función y derecho de las abogadas y los abogados presentar el caso de sus respectivos clientes y clientas en la forma más favorable a sus méritos, es ministerio fundamental de la Judicatura velar por que no se cometa una injusticia. Las juezas o los jueces son partícipes en la búsqueda de la verdad y la determinación de lo que es justo. A esos fines, deberán intervenir durante el curso de cualquier procedimiento judicial para evitar dilaciones injustificadas, para esclarecer cualquier asunto o impedir una injusticia.

No obstante, se abstendrán de unirse en solidaridad con cualesquiera de las partes mediante interrogatorios injustificados, pronunciamientos sobre los méritos de la causa o comentarios impropios o perjudiciales. Tampoco realizarán gestiones que constituyan intervenciones indebidas con testigos, prueba documental o cualquier aspecto del proceso judicial.

## G. *Honorarios por Temeridad*

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad o frivolidad. Así, se establece en el inciso (d) de la mencionada regla lo siguiente:

En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado. 32 LPRA Ap. V, R. 44.1(d).

Se considera temeridad "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables". *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Esta misma conducta se toma en cuenta tanto para la imposición de honorarios de abogado al amparo de la Regla 44.1(d) de Procedimiento Civil, *supra*, como para la imposición del interés legal por temeridad al amparo de la Regla 44.3 (b) de Procedimiento Civil, 32 LPRA Ap. V (2009), R. 44.3 (b). *Id.* Según lo ha expresado el Tribunal Supremo, ambas penalidades "persiguen el mismo propósito de disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte". *Id.*, en la pág. 505. Así, el propósito de la imposición de honorarios por temeridad es penalizar a la parte perdidosa "que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999). Se considera que incurre en temeridad aquella parte que torna necesario un pleito frívolo y obliga a la otra a incurrir en gastos innecesarios. *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005).

A modo de ejemplo, se puede incurrir en conducta temeraria cuando en la contestación a la demanda se niegue responsabilidad, pero esta se acepte posteriormente; cuando la parte demandada se defienda injustificadamente de la acción en su contra; cuando la parte demandada crea que la cantidad reclamada es exagerada y esa sea la única razón para oponerse a los reclamos del demandante; cuando el demandado se arriesgue a litigar un caso del que surja claramente su responsabilidad; y cuando una parte niegue la certeza de un hecho, a pesar de constarle su veracidad. *O.E.G. v. Román González*, 159 DPR 401, 418 (2003).

**La determinación de si una parte obró con temeridad descansa en la sana discreción del tribunal sentenciador**. (Énfasis nuestro.) *P.R.*

*Oil v. Dayco*, *supra*, pág. 511. La imposición del pago de honorarios de abogado es imperativa cuando el tribunal sentenciador concluye que una parte incurrió en temeridad. *Id.* Así pues, el Tribunal Supremo ha resuelto que **"[e]n ausencia de una conclusión expresa a tales efectos, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la parte así condenada"**. (Énfasis nuestro.) *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 DPR 38, 40, (1962). En otras palabras, no es necesaria una determinación expresa de temeridad si el foro sentenciador impuso el pago de una suma por honorarios de abogado en su sentencia. **Por constituir un asunto discrecional del tribunal sentenciador**, los tribunales revisores solo intervendremos en dicha determinación **cuando surja que un claro abuso de discreción.** *P.R. Oil v. Dayco*, supra, pág. 511.

No obstante, es importante aclarar que se entiende que no existe temeridad cuando lo que se plantea ante el foro primario son planteamientos complejos y novedosos que no han sido resueltos en nuestra jurisdicción. De igual manera, no existe temeridad en aquellos casos en que el litigante actúa de acuerdo con la apreciación errónea de una cuestión de derecho y no hay precedentes establecidos sobre la cuestión. Tampoco se incurre en temeridad cuando existe alguna desavenencia honesta en cuanto a quién favorece el derecho aplicable a los hechos del caso. *Santiago v. Sup. Grande*, 166 DPR 796, 821 (2006).

**H**. *Deferencia a Determinaciones Judiciales*

Es norma trillada en nuestro ordenamiento jurídico, que los foros apelativos no intervendremos en aquellas determinaciones de hechos y adjudicación de credibilidad realizada por los foros sentenciadores. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). Esto es así pues los jueces de primera instancia son quienes están en mejor posición de aquilatar la prueba que tienen ante sí, por lo que la apreciación que los jueces de instancia realizan de esta merece de nuestra parte, como tribunal

revisor, gran respeto y deferencia. *Pérez Cruz v. Hosp. La Concepción*, 115 DPR 721, 728 (1984). Cónsono con lo anterior, en ausencia de error manifiesto, prejuicio, pasión o parcialidad, no intervendremos con las conclusiones de hechos o con la apreciación de la prueba que haya realizado el foro primario. *Id.*

**III**

La parte apelante nos señala que incidió el Tribunal de Primera Instancia al declarar con lugar el *injunction* estatutario bajo el Artículo 14.1 de la Ley Núm. 161 de 2009, *supra*, en cuanto a la marquesina, pues la parte apelada no probó los elementos necesarios para esta acción. De igual forma, nos apuntala que erró el foro primario al declarar con lugar el entredicho estatutario establecido en el Artículo 14.1 de la Ley Núm. 161 de 2009, *supra*, para la marquesina, por existir controversia en cuanto la titularidad de la franja de terreno cedida. Por otro lado, nos señala que incidió el foro *a quo* al aplicar retroactivamente la Ley Núm.161 de 2009. Por ser planteamientos similares entre sí, se atenderán de manera conjunta.

En nuestro ordenamiento jurídico las leyes aprobadas no tienen efecto retroactivo, excepto cuando estas expresan lo contrario.[20] Por lo tanto, la retroactividad de una ley es la excepción en su aplicación.[21] No empece a lo anterior, se ha reconocido la aplicación retroactiva de una ley, aunque no conste de manera expresa en el estatuto, si surge de la voluntad implícita del legislador que su aplicación sea retroactiva.[22] Por su parte, la Ley Núm. 161 de 2009, *supra*, aprobada el 1 de diciembre de 2009, en su Artículo 19.13 establece que el estatuto entró en vigor inmediatamente a partir de su aprobación.

En el caso ante nuestra consideración, la parte apelante adquirió de la parte apelada un solar colindante al suyo mediante una escritura pública el 12 de octubre de 2010.[23] La parte apelante, por su parte, construyó una

---

[20] Véase, Artículo 9 del Código Civil de Puerto Rico, *supra*.
[21] Véase, *Mun. de Añasco v. ASES et al.*, *supra*, pág. 324.
[22] *Íd.*
[23] Véase, Apéndice Recurso de *Apelación Civil*, págs. 1-18.

marquesina entre el año 2009 al 2010 y le colocó unas paredes, ventanas y trabajos eléctricos en el año 2020.[24] En el recurso instado ante nosotros, la parte apelante nos plantea que erró el foro primario en la aplicación retroactiva de la Ley Núm. 161 de 2009, *supra*, en los hechos del caso. A luz de este cuadro fáctico, referente al tercer señalamiento de error, resolvemos que no erró el foro primario al aplicar la Ley Núm. 161 de 2009, *supra*, a los hechos de este caso respecto a los trabajos realizados en la marquesina en el año 2020. No obstante, si incidió el TPI en la aplicación de la Ley Núm. 161 de 2009, *supra*, para cuando comenzó la creación de la marquesina en el año 2009 pues le era de aplicación la Ley Núm. 76 de 24 de junio de 1975, *supra*. Esto es así, pues, de una lectura sosegada del estatuto y un análisis sobre el mismo, no nos lleva a concluir que tanto el texto y la intención del legislador fuese que la Ley Núm. 161 de 2009 fuese aplicada de manera retroactiva.

Sin embargo, en cuanto a los hechos particulares del caso ante nuestra consideración, tras evaluar el expediente judicial, la prueba de transcripción oral y tomando siempre en cuenta el principio de deferencia a las determinaciones de hechos realizadas por el Tribunal de Primera Instancia, resolvemos que no erró el foro sentenciador al declarar con lugar el *injunction* estatutario referente a la marquesina, incluso cuando existe controversia sobre una alegada cesión de la franja de terreno, veamos.

El entredicho estatutario que brinda el Artículo 14.1 de la Ley Núm. 161 de 2009, *supra*, es uno similar a su predecesor encontrado en el Artículo 28 de la Ley Núm. 76 de 24 de junio de 1975, *supra*. Ambos facultan a cualquier persona con un interés propietario o personal u ocupante de una propiedad vecina que pudiera verse adversamente afectada, a solicitar mediante este mecanismo estatutario la demolición de aquellas construcciones que no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado o porque

---

[24] *Id.*; Véase, además, Transcripción de Prueba Oral (TPO) del 15 de abril de 2024, págs. 123-124; 124-125; 126-128; 129.

fueron construidas, hechas o mantenidas en violación de esta ley o de cualesquiera de los reglamentos adoptados.[25]

Al ser un remedio extraordinario que se origina por una ley, no se rige por aquellos requisitos rigurosos del entredicho tradicional establecido en la Regla 57 de Procedimiento Civil, *supra*.[26] Por lo que lo determinante preliminarmente es si la situación en controversia está o no cobijada por la ley y "procede cuando se demuestre que la obra […] no cuenta con las autorizaciones y los permisos correspondientes […]".[27]

De entrada, según la prueba desfilada en la vista, quedó meridianamente claro que la parte aquí apelante **no** adquirió un permiso de construcción para la marquesina que ocupa parte del predio de la parte apelada y sus mejoras en los años 2009, 2010 y 2020 en el ARPE o la OGPe como lo requieren sus respectivos reglamentos.[28] Al ser construcciones que no están exentas a requerir permiso de construcción tanto por el Reglamento Núm. 7951 y el Reglamento Núm. 7628, la parte apelante debió haber adquirido sus respectivos permisos. De igual forma, la prueba presentada en la vista cumple con los requisitos reconocidos por la jurisprudencia para declarar con lugar el entredicho estatutario reconocido en el Artículo 14.1 de la Ley Núm. 161 de 2009, *supra*, y el Artículo 28 de la Ley Núm. 76 de 24 de junio de 1975, *supra*, por lo que no le asiste razón a la parte apelante en su primer señalamiento de error.

Por otro lado, no vemos como el hecho de que el Tribunal de Primera Instancia decidiera atender el asunto de la posible cesión de la franja de terreno en una vista aparte afectará la decisión respecto al *injunction* estatutario, por lo cual no le asiste razón a la parte apelante en su segundo planteamiento de error.

---

[25] Véase, Artículo 14.1 de la Ley Núm. 161 de 2009, *supra*; Artículo 28 de la Ley Núm. 76 de 24 de junio de 1975, *supra*.

[26] Véase, *CBS Outdoor v. BillBorad One, Inc. et al.*, *supra*, pág. 409; *Next Step Medical v. Bromedicon et al.*, *supra*, pág. 497.

[27] Véase, *Díaz Vázquez y otros v. Colón Peña y otros*, *supra*.

[28] Véase, TPO en las págs. 40, líneas 3-10; 41, líneas 2-7; 63, líneas 1-7; 75, líneas 10-20; 77, líneas 8-18; 85, líneas 1-4; 101, líneas 2-9; 112, líneas 1-20; 113, líneas 1-16; 123-124, líneas 4-12; 125, líneas 2-19; 128, líneas 1-5; 129, líneas 12-20.

Como cuarto planteamiento de error, la parte apelante nos señala que incidió el foro sentenciador en la aplicación de la Regla 607 de Evidencia de Puerto Rico, *supra*, al realizar un directo que subsanaba la ausencia de prueba por la parte apelada en lugar de limitarse a preguntas aclaratorias sobre prueba ya presentada como permite la regla. No le asiste razón.

La Regla 607 de Evidencia en su inciso (F), permite que el juzgador o juzgadora de los hechos interrogue a una o a un testigo.[29] Este interrogatorio debe ir dirigido a aclarar las dudas que tenga el juez o la jueza o para aclarar el récord.[30] El juez o jueza debe evitar convertirse en abogado o abogada de una de las partes realizando preguntas que sugieran una respuesta particular.[31] Las juezas o los jueces, por otro lado, deben ser partícipes en la búsqueda de la verdad, por lo que deberán intervenir durante el curso de cualquier procedimiento para esclarecer cualquier asunto o impedir una injusticia.[32]

Tras evaluar el expediente judicial y la transcripción de prueba oral, nos encontramos con que la jueza realizó preguntas encaminadas en aclarar el récord y para el esclarecimiento del asunto en controversia. En específico, la jueza realizó las siguientes preguntas al perito Ingeniero Juan García Badillo:

> Ok el Tribunal sí tienes preguntas. En el día estamos por una vista del catorce, punto, uno (14.01). ¿Ingeniero, esta marquesina que usted pudo ver, eh, requiere, conforme a su experiencia y teniendo conocimiento que usted aclara aquí en cuanto a construcción de urbanizaciones, eh, y, y todo lo que requiere, incluso el Reglamento Conjunto, que ustedes obviamente se lo conocen mejor que el tribunal, requeriría un permiso, ya fuera de la ARPE o de la OGPe en su momento? ¿La construcción…? Bueno, ya fue para el dos mil veintitrés (2023), veinte, veinte (2020), de la OGPe. ¿Requería algún para la construcción, según los materiales que pueden ver?
>
> […]
>
> Licenciado. El Tribunal tiene la potestad en cuanto para hacer todas las preguntas en la búsqueda de la justicia, porque nosotros estamos aquí para resolver en [estricto] [derecho] y el Tribunal está facultado para hacer preguntas.

---

[29] Véase, Regla 607 de Evidencia de Puerto Rico, *supra*.
[30] *Id.*
[31] *Id.*
[32] Véase, Canon 11 de Ética Judicial de Puerto Rico, *supra*.

[…]

… Así que, Ingeniero, le pregunto, usted estuvo allí en noviembre del dos mil veintitrés (2023). Estaba haciendo sus labores contratadas, en este caso, para una labor en particular. De conformidad a su observación y a los materiales que está construida esa marquesina, la pregunto, ¿requiere esta marquesina permiso de construcción?[33]

Según se desprende de lo anterior, la jueza realizó una serie de preguntas al perito con la intención de aclarar si la marquesina realizada por la parte apelante conllevaba un permiso de construcción o no, asunto que se encontraba en controversia. No vemos algún indicio por parte de la jueza que nos lleve a concluir que esta realizó "un directo" que subsanara el realizado por la parte apelada, por lo que no le asiste la razón a la parte apelante en su cuarto señalamiento de error.

Finalmente, la parte apelante nos plantea que erró el foro primario al imponerle honorarios por temeridad. No le asiste razón, veamos.

La Regla 44.1 (d) de Procedimiento Civil, *supra*, permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad o frivolidad. Una parte o su abogado actúa con temeridad cuando realiza aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones que pudieron ser evitables.[34] La determinación de si una parte obró con temeridad descansa en la sana discreción del tribunal sentenciador, por lo que los tribunales revisores solo intervendremos en dicha determinación cuando surja un claro abuso de discreción.[35]

Al evaluar la *Sentencia Parcial y Resolución*, el legajo judicial y la transcripción de la prueba oral, no encontramos indicio de abuso de discreción por parte del Tribunal de Primera Instancia, por tal razón damos completa deferencia al foro sentenciador en la imposición de honorarios a la parte aquí apelante.

---

[33] Véase, TPO en las págs. 73-76.
[34] Véase, *Marrero Rosado v. Marrero Rosado*, *supra*, pág. 504.
[35] Véase, *P.R. Oil v. Dayco*, *supra*, pág. 511.

**IV**

Por los fundamentos que nos anteceden, confirmamos el dictamen apelado.

**Notifíquese.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones